UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

NATIONAL UTILITY SERVICE, INC.,

        Plaintiff,

        -against-

TIFFANY & CO. and TIFFANY AND COMPANY,

        Defendants.

-----------------------------------------------------------------X

Case No.: 07 CV 3345 (RJS)(GWG)

AFFIDAVIT OF DAVID M. BROWN

STATE OF NEW JERSEY  )
                                ss:
COUNTY OF BERGEN    )

        DAVID M. BROWN, being duly sworn, states as follows:

        1.        I am Vice President of the plaintiff, National Utility Service, Inc. ("**NUS**"). As such, I am fully familiar with the material facts pertaining to NUS's claim against defendants, Tiffany & Co. and Tiffany and Company (collectively, "**Tiffany**" or "**Defendants**") for payment under the parties' utility cost consulting contract. I submit this affidavit in opposition to Defendants' motion for summary judgment and in support of NUS's cross-motion for summary judgment. I make this affidavit based upon personal knowledge and documents in the possession of NUS, including its files relating to its business relationship with Defendants, with which I am familiar.

        2.        NUS has designated me as an expert witness with respect to the reading, interpretation and analysis of utility bills, including electric bills, and with respect to the calculation of NUS's damages in this case. As such, I am familiar with NUS's business practices and its relationship with Defendants.

A.      **Background and Qualifications**.

3.      I have been employed by NUS since 1984, for 24 consecutive years.

4.      I began my career with NUS as an Account Manager. I held this position for about two years. My responsibilities included issuing recommendations to clients and ensuring the investigation and implementation of the recommendations. I also reviewed and issued savings computations to clients.

5.      I next became a Group Manager and held this position for about eight years. In this position I managed various groups within the company, including the Billing Department. This department's responsibilities included the calculation and issuance of bills to clients for NUS's share of refunds and savings.

6.      Next, I became Assistant Vice President and held this position for about two years. In this capacity I supervised the daily operations of the Rate and Tariff Department. This department was responsible for the analysis of energy issues and issuance of recommendations for savings and refunds to NUS's clients. I was also frequently involved in meeting with NUS consultants and clients to review and explain issues relating to recommendations and savings calculations.

7.      Finally, I became Vice President responsible for operations in 1997. I oversee the daily operations for NUS's headquarters located in New Jersey. This involves management of the staff, execution of contracts between NUS and clients, direct reporting to senior executives and direct oversight of major accounts.

8.      I have previously been accepted as an expert on damage calculations and testified as such in the trial of the case *National Utility Service, Inc. v. Cambridge Lee Industries, Inc.*, Civil Action No. 02-3294 (D. N.J.). The trial of that case was held in during spring 2004.

**B.  NUS's Damage Calculations.**

9.  NUS's damages (or fees) are based on the refunds and savings realized by Defendants as a result of their implementation of NUS's recommendation with respect to overcharges found on Defendants' electric service bills for their store located at 1980 Northern Blvd., Manhasset, New York ("**Manhasset Store**"). The savings *began* when the billing error was corrected (the billing period December 27, 2006 to January 25, 2007); they did not end upon correction of the error.

10.  NUS's damage calculations were prepared by NUS's personnel under my supervision. The format of "Statement of Account" and "Invoice" is the same as that used by NUS when it renders invoices to its customers for its share of realized refunds and savings.

11.  The invoices were prepared late in the discovery period, after NUS received electric service bills from the utilities, all of which were required for NUS to compute its fee.

12.  The invoices are computations of damages rooted in a methodology that NUS has employed for 75 years. According to that methodology, NUS computed the "savings" realized by Tiffany as the difference between the actual bills for each applicable period and the amount the billing would have been, if the bills had not been corrected pursuant to NUS's recommendation.

13.  Based upon my calculations, NUS has sustained damages in the total sum of **$964,906.29**, plus applicable prejudgment interest.

14.  For each month of the sixty month savings participation period, commencing with the first correctly rendered bill after the implementation of NUS's recommendation (the billing period December 27, 2006 to January 25, 2007), the costs paid for electric service at the

Manhasset Store ("**Present Costs**") were subtracted from the costs that Tiffany would have paid had the electric service bills of LIPA and Con Ed not been corrected as recommended by NUS ("**Former Costs**").

15.     At the time of the calculation of the damages NUS had been provided in discovery with utility bills for only the first fourteen months of the sixty month savings participation period. Based upon actual billing and usage data for these fourteen months (December 27, 2006 to February 26, 2008) the total amount of savings realized by Tiffany is $432,586.48, and NUS's fee based thereon is **$216,293.24**.

16.     Because NUS was able to obtain the utility bills for only the first fourteen months, it projected the monthly savings, and its fee thereon, for the remainder of the sixty month period based upon an average savings and fee for the first fourteen months. Based upon an average monthly savings during such fourteen month period of $30,899.04, and NUS's average monthly fee during such period of $15,449.52, NUS projected that it is entitled to an additional **$710,677.92** as its fee for the remaining forty-six months of the savings participation period (fifty (50%) percent of the gross savings of $1,421,355.80 (46 months X $30,899.04)).

17.     NUS also included as part of its damage calculations its fee for fifty (50%) percent of the refunds received by Tiffany. Tiffany received refunds from LIPA and Con Ed in the aggregate sum of $67,021.58, and NUS's fee under the Contract is equal to **$33,510.79**.

18.     The calculations of NUS's share of the refunds and savings, together with a summary of all damages, are set forth in Exhibit FF as updated in Exhibit GG (all exhibits are annexed to the Declaration of Peter G. Goodman). The updated calculations increased NUS's claim by **$4,424.34**. The adjustment was necessary because the billing credits issued by LIPA each month need to correctly match the billing charges reflected on Con Ed invoices.

19. Thus, NUS's aggregate claim is for the sum of $964,906.29.

20. In forming my opinions and calculating NUS's damages I considered (a) the Contract between NUS and Tiffany dated April 7, 1992 (Ex. A), (b) invoices and billing data for the applicable periods from LIPA rendered to Tiffany and Polo/Ralph Lauren (Exs. CC, DD and EE, respectively), (c) invoices for the applicable periods from Con Ed rendered to Tiffany (Ex. LL), (d) the Electricity Sales Agreements between Tiffany and Con Ed, together with correspondence establishing the extension of the last Electricity Sales Agreement (Exs. AA, BB, II), and (e) LIPA rates for the Manhasset Store during the applicable periods (Exhibit HH).

21. Finally, when calculating Tiffany's Former Costs (those that it would have paid had the bills not been corrected), NUS applied a meter multiplier of 180. NUS used this multiplier because it was the multiplier which had been applied on the incorrect LIPA bills rendered to Tiffany. Only by applying this multiplier to the Polo meter readings (and then calculating the charges according to LIPA's rate for Tiffany) can NUS accurately re-create what Tiffany would have been billed by LIPA had the error not been corrected.

*/s/ David M. Brown*
David M. Brown

Sworn to before me this
4th day of September, 2008

*/s/ Mary E. Cataldo*
Notary Public

MARY E. CATALDO
Notary Public of New Jersey
Bergen County ID # 2359833
Commission Expires May 10, 2012

5